Ronald A. Valenzuela (State Bar No. 210025)
Ronald.Valenzuela@LathropGPM.com
**LATHROP GPM LLP**
2049 Century Park East, Suite 3500
Los Angeles, CA 90067
Tel: 310.789.4600   Fax:  310.789.4601
Attorneys for Defendant The Ergo Baby Carrier, Inc.

MARK A. MILLER (admitted *pro hac vice*)
miller.mark@dorsey.com
ELLIOT HALES (SBN 293535)
hales.elliot@dorsey.com
**DORSEY & WHITNEY LLP**
111 South Main Street, Suite 2100
Salt Lake City, UT 84111-2176
Telephone:  (801) 933-7360
Facsimile:  (801) 933-7373

Attorneys for Plaintiff BabyBjörn AB
(*additional counsel on next page*)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BABYBJÖRN, AB,<br><br>                        Plaintiff,<br><br>vs.<br><br>THE ERGO BABY CARRIER, INC.<br><br>                        Defendant. | Case No. 2:23-CV-00446 AB(RAOx)<br>Assigned to the Hon. Andre Birotte,Jr.<br><br>**JOINT STIPULATION REGARDING PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND EMAIL DISCOVERY**<br><br> Action Filed: January 20, 2023<br> Trial Date:  September 17, 2024 |
| THE ERGO BABY CARRIER, INC.<br><br>                        Counter-Plaintiff,<br><br>vs.<br><br> BABYBJÖRN, AB,<br><br>                        Counter-Defendants. | |

Travis W. McCallon (admitted *pro hac vice*)
Travis.McCallon@LathropGPM.com
Luke M. Meriwether (admitted *pro hac vice*))
Luke.Meriwether@LathropGPM.com
Timothy J. Hadachek (admitted *pro hac vice*)
Timothy.Hadachek@LathropGPM.com
**LATHROP GPM LLP**
2345 Grand Boulevard, Suite 2200
Kansas City, MO 64108
Tel:  816.292.2000   Fax:  816.292.2001

Attorneys for Defendant The Ergo Baby Carrier, Inc.


FAISAL M. ZUBAIRI (SBN 244233)
zubairi.faisal@dorsey.com
JESSICA M. LEANO (SBN 323677)
leano.jessica@dorsey.com
**DORSEY & WHITNEY LLP**
600 Anton Boulevard, Suite 2000
Costa Mesa, CA 92626-7655
Telephone:  (714) 800-1400
Facsimile:  (714) 800-1499

Attorneys for Plaintiff BabyBjörn AB.

Plaintiffs and Counter-Defendants BabyBjörn, AB ("Plaintiffs") and Defendant Ergo Baby, Inc. ("Ergo Baby" or "Defendant") (collectively, the "Parties"), by and through their respective counsel, hereby stipulate and agree as follows in regards to the discovery and production of documents and things in this case.

**Electronically Stored Information**

1.      This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules, and any other applicable orders and rules.

2.      Materials retained in tape, floppy disk, optical disk, or similar formats primarily for back-up or disaster recovery purposes are deemed not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B) and, accordingly, are not subject to production unless specific facts demonstrate a particular need for such evidence that justifies the burden of retrieval. Archives stored on computer servers, external hard drives, notebooks, or personal computer hard drives that are created primarily for back-up or disaster recovery purposes and not used as reference materials in the ordinary course of a party's business operations need not be searched or produced absent good cause, and further subject to the producing party's claim of undue burden or cost or other objections.

**Document Production**

3.      The Parties shall produce any discoverable information required to be produced in this case, whether originally stored in paper or electronic form (ESI or email), in the manner described herein absent a subsequent agreement by the Parties or Order from the Court.

4.      Any Party may use technology assisted review ("TAR") in connection with its review and production of documents. If a party uses TAR, it shall disclose the TAR software used, the TAR methodology used, the criteria used to identify the universe of documents to which TAR was applied (including any pre-culling of documents, search terms, domain filtering, file-type exclusions, minimum text requirements, etc.), the

methodology of the training process, the targeted level of recall (e.g., 70%) and any other standards for stopping review, the methodology and results of the validation testing used, and how documents containing little or no text (e.g., media files, images, un-OCR'ed PDFs, encrypted files) were handled.

5.     The Parties will make reasonable efforts to de-duplicate Electronic Documents globally prior to production in a manner that does not break up document families (such as emails and attachments), but the original ESI shall be preserved.  For any document that is de-duplicated, the Producing Party shall provide metadata fields identifying all custodians possessing the document, and the file path for every version of the document.

6.     In order to reduce the volume of entirely duplicative content within email threads, the Parties may utilize "email thread suppression."  As used in this agreement, email thread suppression means reducing duplicative production of email threads by producing the most recent email containing the thread of emails, as well as all attachments within the thread, and excluding emails constituting exact duplicates of emails within the produced string.  For purposes of this paragraph, only email messages in which the parent document, senders and recipients, and all attachments are exactly the same will be considered duplicates.  Duplicative emails suppressed under this paragraph need not be reflected on the Party's privilege log. With respect to non-email custodial ESI stored on chat platforms such as Microsoft Teams Chats, if any, documents that are associated by hyperlink or otherwise linked to another location or file without being embedded will not be treated as attached files and will not be produced as if attachments in order behind the document in which they were referenced by link. Such documents will be treated in accordance with their originating location and collected, processed, and produced as governed by the relevant procedures and protocols as outlined in this order for each document's file type and data source.

**For Documents gathered from or stored in electronic format:**

7.     *General Document Image Format*:  Each electronic document shall be

produced in single-page Tagged Image File Format ("TIFF").  All TIFF files should be provided in a single-page, Group IV, and 8 $\frac{1}{2}$ x 11 inch page size format at a minimum of 300 x 300 dpi resolution (except for documents requiring a different resolution or page size).  The Parties further agree that all documents originating in color shall be produced in color.

8.    *Bates Numbering and Unique IDs*:  Bates numbers shall be unique IDs with a prefix that can be readily attributed to the producing party. Bates numbering should be sequential. The Parties agree to use placeholders (e.g., a Bates-numbered page labeled "intentionally left blank"), rather than skipping Bates numbers in production. Each image should have a unique file name.  For single-page TIFFs, the unique file name will be the Bates number of the page.

9.    *Extracted Text Files*:  For each document, a text file containing the extracted text should be provided along with the corresponding TIFF images. The text of files collected and reviewed in native format should be extracted at document-level directly from the native file. The text file should be named after the Beginning Bates number of the document. For those electronic files that do not have embedded text (such as certain .PDF files and image formats), the file should be imaged and OCR'd, and the subsequent OCR text files should be delivered in a manner consistent with the above.

10.    The Producing Side shall use the following specifications when converting ESI from its Native Format into the TIFF image files prior to its production:

        a. All tracked changes shall remain visible if such changes are visible upon collection.

        b. OLE Embedded files shall not be extracted as separate documents.

        c.  Author comments shall remain or be made visible to the extent reasonably feasible upon collection.

        d.  Hidden columns and rows shall remain accessible if they are accessible upon collection.

1

2

e. All presenter notes shall remain visible if such notes are visible upon collection.

3

4

5

11.   *Time Zone*:  The Parties agree that the entirety of each party's ESI shall be processed using a single time zone, identified as a fielded value in the production database load file.

6

7

8

9

10

12.   *Metadata Fields*:  The Metadata fields set forth in the attached **Table 1** should be provided for each record to the extent such fields exist for that record.  Absent a showing of good cause, no additional metadata need be produced.  The Parties agree not to modify or otherwise alter metadata for files originating in electronic form unless necessary to protect privilege and/or confidentiality claims.

11

12

13.   *Native Format Files:* The Parties agree to supplement their image-based production with the exchange of certain file types in their native form.

13

14

15

(a)   The Parties agree that the following document types shall be provided in native form and need not be additionally produced in image form as set forth above:

16

17

18

19

20

- Spreadsheets (e.g., .XLS, .XLSX);
- Presentations (e.g., .PPT, .PPTX); and
- Media files (e.g., .MP3, .WAV, .MPG, .AVI, .MOV, etc.).
- Computer aided design files (e.g., .DWG, .DXF, .3DS, .MDX, .STL, .STP, etc.)

21

22

23

(b) The Parties further agree that for a document produced in native form, the Parties will include a corresponding Bates-numbered slip-sheet indicating that the file has been produced in native format.

24

25

26

(c) To ensure tracking, data integrity, and to provide a means for authentication, the Parties agree that all produced native files will be assigned a unique file name that includes the Bates number of the corresponding placeholder.

27

28

(d)   To the extent that any document is redacted to preserve a claim of privilege, the Parties agree that such redacted documents will be provided in image form

only, except that the Parties may use native redaction tools for Excel files and produce redacted Excel files in native form.  The Parties agree that redactions may only be made for privilege, work product, or other privileges and/or immunities, and may not be made on grounds of irrelevance.

(e)    For all other document or file types, the Parties agree that any party has the right to seek production of other documents or files in their native form should they identify files whose meaning and interpretation requires that they be reviewed in such a manner. The Parties agree to limit the request for such files in good faith, and submit any request according to the following protocol:

(i)    The receiving party shall provide a list of Bates numbers of the imaged documents sought to be produced in native file format.

(ii)    The producing party shall have 10 days to either produce the native documents or object to the demand by responding in writing and setting forth its objection(s) to the production of the requested native format files.  In the event an objection is made, the Parties shall meet and confer regarding the request and corresponding objection(s).  If the Parties are unable to agree as to the production of the requested files in native format, the Parties may submit the matter to the Court.

**For Documents scanned or otherwise converted into electronic format from paper copy documents:**

14.    *General Document Image Format*:  All TIFF files should be provided in a single-page, Group IV, black & white, and $8 \frac{1}{2}$ x 11 inch page size format at a minimum of 300 x 300 dpi resolution (except for documents requiring a different resolution or page size).

15.    *Unique IDs*:  Each image should have a unique file name. For single-page TIFFs, the unique file name will be the Bates number of the page.

16.    *Text Files*:  For each document, a document-level OCR text file should be provided along with the corresponding TIFF images. The text file should be named after the Beginning Bates number of the document.

17.   *Objective Coding Fields:*  The following objective coding fields should be provided for all produced hard copy documents:

      (a) Beginning Bates Number;

      (b) Ending Bates Number;

      (c) Beginning Attachment Bates Number (if applicable);

      (d) Ending Attachment Bates number (if applicable);

      (e) Page count; and

      (f) Source/Custodian.

**Attachments and Attachment Ranges**

18.   Parent-child relationships (the association between an attachment and its parent document) should be preserved, and each parent document and all its associated attachments should be produced as separate documents. Bates numbering of a parent document and any attachments shall be sequential such that a parent document has the lowest value Bates number when compared to its attachment(s). The Parties agree to provide family/attachment Bates ranges for all productions.

**Transmission and Delivery of Production Material**

19.   The Parties agree to provide production material in a reasonably usable manner, typically on USB drives (external, flash/thumb), or via secure transmission (via FTP or other method).  If possible, the Parties agree <u>not</u> to deliver any single production on multiple soft or optical media (CD/DVD).  The Parties agree that production material produced on media shall be encrypted.

**Resolution of Production Issues**

20.   Documents that cannot be read because of imaging, formatting, or other technical issues shall be promptly identified by the receiving party within an exceptions index which will list the document and reasons for the exception ("Exceptions Index"). The Parties shall meet and confer to attempt to resolve the issues with respect to any documents contained on the Exceptions Index to the extent the exceptions are within either party's control.

**Email Discovery**

21.     General production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email, the Parties must propound specific email production requests that shall be identified by the title of the discovery document as "Plaintiff's Email Production Requests (Set One)" or "Defendants' Email Production Requests (Set One)" or the like.

22.     Email production requests shall identify the custodians, search terms, and time frame, and the Parties shall cooperate to properly identify the same.

23.     Each side shall limit its email production requests to a total of eight (8) custodians and a total of five (5) search terms per custodian. The Parties may jointly agree to modify this search term limit without the Court's leave, and the Parties shall cooperate if additional email custodians are warranted. The Court may consider contested requests for additional search terms and additional email custodians, upon a showing of distinct need based on the size, complexity, and issues of this case.

24.     The Parties agree to confer on a process to test the efficacy of the search terms and the proportionality of the search terms according to Rule 26(b) of the Federal Rules of Civil Procedure. The search terms shall be narrowly tailored to particular issues in the case as identified by the Parties. Indiscriminate terms, such as the producing company's name or its product name, are presumed to be inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production. Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant

to this paragraph, this shall be considered in determining whether any party shall bear all reasonable costs caused by such additional discovery.

25. If the parties disagree on the efficacy of the search terms and the proportionality of the search terms according to Rule 26(b) of the Federal Rules of Civil Procedure, the burden shall be on the party seeking discovery to show good cause for the use of such search terms.

**Privilege Logs**

26. The Parties agree that privilege logs will be exchanged in this litigation at a mutually agreeable date and time, and subsequently supplemented as necessary.

27. The Parties additionally agree that there is no requirement to log privileged information dated on or after January 20, 2023, the date the above-captioned case was filed in the United States District Court for the Central District of California. For the sake of clarity, this date restriction <u>does not</u> apply to non-privileged, responsive documents as contemplated above.

28. The Parties' privilege logs shall contain at least the following categories of information for each logged entry: (a) an assigned document identification number; (b) the date of the document or communication; (c) the nature of the document (i.e., email, document, memorandum, attachment, etc.); (d) the From/To/CC/BCC fields for all communications; (e) the nature of the claimed privilege; and (d) a summary of the general subject matter of the document or communication.

29. For email communications, where all of an email string is privileged, the Parties need only include one entry on the privilege log for the entire email string and need not log each email contained in the chain separately.

30. To the extent a privileged communication is contained in only a portion of an email string or in a portion of an attachment within a parent-child relationship, the privileged portions shall be included on the privilege log and the parent-child(ren) shall be produced in redacted form along with the rest of the non-privileged portions of the email string and the attachment(s).

**Production of Privileged or Work-Product Documents**

31.   Consistent with Federal Rule of Evidence 502, the production of documents in connection with the litigation before this Court, whether inadvertent or otherwise, shall not waive any privilege or work product that would otherwise attach to the documents produced in this litigation or in any other federal or state proceeding. In addition, to the fullest extent authorized by Federal Rule of Evidence 502(d), any applicable work-product protection or attorney-client privilege is not waived as to anyone who is not a party to this action by disclosure connected with this action.

32.   The Parties agree that for any such claim of inadvertent production they will follow the procedures outlined in Section 11 of the Stipulated Protective Order. *See* Dkt. 33.

**Foreign-Language Materials**

33.   For any documents or files produced by a party that contain non-English text, the Parties agree that the producing party must produce any English translations of all such documents in their possession, custody, or control. Additionally, to the extent that a party relies upon a document or filing containing non-English text in an interrogatory response via Fed. R. Civ. P. 33(d), the producing party shall provide certified translations of all such documents at its expense.

///
///
///
///
///
///
///
///
///
///

1    **Modification**

2        34.    The Parties agree that this Stipulated Order may be modified by further

3    stipulation of the Parties for good cause shown or by Order of the Court

4

5    **IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

6

7    Dated: October 25, 2023        **LATHROP GPM LLP**

8

9                                By *_/s/ Travis W. McCallon_*

10                                    RONALD A. VALENZUELA

                                   TRAVIS W. MCCALLON

11                                    LUKE M. MERIWETHER

                                   TIMOTHY J. HADACHEK

12                                    Attorneys for Defendant

13                                    The Ergo Baby Carrier, Inc.

14

15                                    **DORSEY & WHITNEY LLP**

16                                  By *_/s/ Mark A. Miller_*

17                                    MARK A. MILLER

                                   ELLIOT HALES

18                                    FAISAL M. ZUBAIRI

19                                    JESSICA M. LEANO

20                                    Attorneys for Plaintiff BabyBjörn AB

21

22    **FOR GOOD CAUSE SHOWN, IT IS SO ORDERED.**

23

24    DATED: October 30, 2023

25

26    *Rozella A. Oliver*

27    HON. ROZELLA A. OLIVER

      United States Magistrate Judge

28

**ATTESTATION**

     Pursuant to Central District Local Rule 5-4.3.4, the filer hereby attests that all other signatories to this "Joint Stipulation Regarding Production of Electronically Stored Information and Email Discovery" and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated:     October 25, 2023                      */s/ Travis W. McCallon*

**TABLE 1**

| Field/Metadata | Description |
| --- | --- |
| **All Files – Structural Fields** | |
| Begin Bates | Identifies the Bates number of the beginning page of a document. |
| End Bates | Identifies the Bates number of the ending page of a document. |
| Begin Attach | Identifies the Bates number associated with the first page of a parent document in a document family. |
| End Attach | Identifies the Bates number associated with the last page of the last attachment to a parent document in a document family. |
| Custodian/Source | Identifies the collection source or custodian of the collected document. |
| All Custodian/Sources | Assuming global de-duplication, identifies any individual other than the collection source or custodian of the collected document who had a copy of a document or communication |
| Confidentiality | Identifies the confidentiality designation of the document. |
| Page Count | Identifies the number of pages (images) for the document. |
| **Metadata – Email Only** | |
| From | Identifies the sender of an email ("From"). |
| To | Identifies all recipients of an email ("To"). |
| CC | Identifies all individuals copied on an email ("Cc" or "Copied To"). |
| BCC | Identifies all individuals blind copied on an email ("Bcc" or "Blind |
| Subject | Identifies the subject line of an email. |
| Date Sent | Identifies the date an email was sent (if present/applicable). |
| Date Received | Identifies the date an email was received (if present/applicable). |
| ParentID | Identifies the ID of the parent document in a document family. |
| AttachIDs | Identifies the ID(s) of the children document(s) in a document family. |
| Attachment Count | Identifies the number of attachments to an email. |
| Attachment Names | Identifies the file names of all attachments to an email. |
| **Metadata – Electronic Files/Attachments Only** | |
| File Name | The file name of a document. |
| File Extension | Identifies the extension of the file. |
| Author | Identifies the author of a document. |
| Date Created | Identifies the date the document was first created (if present/applicable) |
| Date Last Modified | Identifies the date the document was last modified (if present/applicable) |