

Mark Miller
Partner
(801) 933-4068
miller.mark@dorsey.com

February 23, 2024

**VIA ECF**

The Honorable Rozella A. Oliver
Magistrate Judge, United States District Court
Central District of California
Roybal Federal Building and US Courthouse
255 E. Temple Street, Courtroom 590
Los Angeles, CA 90012

Re: Ergo's Request to Compel Sweden-based Witnesses to be Deposed in Los Angeles
*BabyBjorn AB v. The Ergo Baby Carrier, Inc.*,
Civil No.: 23-cv-00446-AB(RAOx)
Fact Discovery Cutoff: April 12, 2024
Expert Discovery Cutoff: April 26, 2024

Dear Judge Oliver:

Defendant The Ergo Baby Carrier, Inc.'s ("Ergobaby") demand for Plaintiff BabyBjörn AB's ("BabyBjörn") Sweden-based witnesses to travel to California for depositions imposes an undue burden on BabyBjörn, is contrary to the interests of justice, and is the antithesis of efficiency. Ergobaby fails to consider the applicable factors under this Court's precedent and ignores critical facts strongly counseling against compelling five Sweden-based witnesses to travel to California. When the appropriate legal standard is applied with a view toward judicial efficiency, balancing the relative burdens, and the interests of justice, it is clear that BabyBjörn has established good cause to have the depositions of its corporate representatives take place in Sweden, either via remote video deposition or in-person.

### Legal Standard

"A party may unilaterally choose the place for deposing an opposing party, subject to the granting of a protective order by the Court pursuant to Rule 26(c)(2), Fed.R.Civ.P., designating a different place." *Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 628 (C.D. Cal. 2005). "Nevertheless, the general rule for setting the location of a corporate party's deposition is" that the "deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business." *Id.* (quoting Wright, Miller & Marcus, *Federal Practice and Procedure: Civil* 2d § 2112 at 84–85 (1994 rev.)). This Court's *Cadent* decision identified various factors (often cited as "the *Cadent* factors") that may "dissipate the presumption" that corporate representatives are deposed where the party's principal place of business is located, including (a) the location of counsel for the parties in the forum district, (b) the number of representatives a party is seeking to depose, (c) the likelihood of significant discovery disputes arising that would necessitate resolution by the forum court, (d) whether the persons sought to be deposed often engage in travel for business

purposes, and (e) the equities regarding the nature of the claim and the parties' relationship. *Id*. at 628-29; *see also, e.g., Bella+Canvas, LLC v. Fountain Set Ltd.*, No. 2:21-cv-00758-ODW-MAA, 2022 WL 3697358, at *31-32 (C.D. Cal., June 29, 2022) (denying motion to compel Hong Kong witnesses to travel to California; "Here, a balance of the *Cadent* factors does not compel a finding that the presumption [of corporate depositions taking place in Hong Kong] is overcome."); *Imageware Sys., Inc. v. Fulcrum Biometrics, LLC*, No. 13CV936-DMS(JMA), 2014 WL 12489939, at *2-3 (S.D. Cal. Nov. 26, 2014) (citing *Cadent* factors to find that corporate representatives should be deposed in corporate headquarters in Lithuania, rather than San Diego); *La Jolla Cove Invr's, Inc. v. GoConnect Ltd.*, No. 11-CV-1907-JLS (JMA), 2012 WL 13175865, at *3-4 (S.D. Cal., June 15, 2012) (granting protective order; "An examination of the five *Cadent* factors thus supports the conclusion that the depositions of GoConnect's corporate witnesses should take place in Melbourne, Australia, GoConnect's principal place of business."); *Finjan, Inc. v. ESET, LLC*, No. 17CV183 CAB (BGS), 2017 U.S. Dist. LEXIS 197466, at *6 (S.D. Cal., Nov. 29, 2017) (ordering corporate depositions to occur in Slovakia; "[T]he Court finds that the *Cadent* factors weigh in favor of ESET, and therefore finds that the presumption that Rule 30(b)(6) depositions of corporate witnesses are held at a company's headquarters has not been rebutted.").

Ergobaby suggests that when evaluating the location of the depositions of a plaintiff's corporate witnesses, there is a supposed "well established" presumption that they occur in the forum where the suit was filed, citing unpublished decisions outside of this district (in N.D. Cal), and two unpublished decisions from this Court relying on N.D. Cal decisions. Def. Ltr. at 2-3. However, this Court's published precedent in *Cadent* addressed a motion to compel **the plaintiff's witnesses** to travel to Los Angeles, and applied the "general rule" that the "deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business." *Cadent*, 232 F.R.D. at 628.[1] Moreover, the published precedent from the Northern District of California explains that when Rule 30(b)(6) designees are at issue, which is the case here, even the presumption Ergobaby cites for a plaintiff's witnesses gives way to an "exception" favoring "the corporation's place of business." *Fausto v. Credigy Servs. Corp.*, 251 F.R.D. 427, 429 (N.D. Cal. 2008). Accordingly, the non-published decisions cited by Ergobaby are not precedent and, in any event, do not control in the present circumstances, where Rule 30(b)(6) corporate designees are at issue.[2] The published precedent from this Court imposes a general presumption that depositions

---

[1] The Court then applied the *Cadent* factors and found the presumption rebutted, ordering the depositions to take place in Los Angeles and shifting the travel costs of the plaintiff's witnesses to the defendant. *Id*. at 630.

[2] The unpublished decisions Ergobaby relies on addressed **individual** depositions rather than Rule 30(b)(6) depositions, and even acknowledged the standard would be different in the present case. *See HTC Corp. v. Tech. Properties*, Nos. C08-00882 JF (HRL), 08-00877-JF, 08-00884-JF, 2008 WL 5244905, at *2 (N.D. Cal. Dec. 16, 2008) (recognizing "that 30(b)(6) witnesses should be deposed at their principal place of business" and "no one knows whether any of the Taiwanese employees will be designated as HTC's witness for a 30(b)(6) deposition"); *Mueller v. Cty. of San Bernardino*, No. ED CV 18-151-DSF (SPx), 2019 WL 9050998, at *1 (C.D. Cal., Dec. 19, 2019)

4866-0934-6727\1

of corporate designees from either party take place where the party has its principal place of business. If that location is challenged, the Court evaluates the *Cadent* factors to determine if the circumstances warrant departing from that norm.

Even if the presumption in favor of the forum state were applied here, the present circumstances significantly negate the strength of that presumption. First, BabyBjörn did not chose Ergobaby's home jurisdiction for strategic purposes—BabyBjörn *had to* file in the present venue. *See* 28 U.S.C. §1400(b) ("Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."). Second, Ergobaby has filed counterclaims, placing BabyBjörn in the shoes of defendant as well, which is a meaningful distinction. *See Avago Techs. U.S. Inc. v. IPtronics, Inc.*, No. C 10-02863 EJD (PSG), 2012 U.S. Dist. LEXIS 159260, at *2 (N.D. Cal. Nov. 6, 2012) ("Defendants are not merely respondents in this case, but have themselves invoked this court's jurisdiction by their affirmative counterclaims."). Finally, Ergobaby cannot credibly claim that it prefers conducting litigation activities in its home district, because Ergobaby recently filed a retaliatory patent lawsuit against BabyBjörn in the Western District of Texas—a venue with no connection to the parties, the witnesses, the evidence, or the underlying facts. *See* Complaint (Ex. B). As BabyBjörn is a foreign defendant, Ergobaby could have chosen any district, including its home district here, but chose the disconnected West Texas venue for tactical purposes, given its reputation as a fast-track, plaintiff-friendly venue for patent cases. *See, e.g.,* https://www.jdsupra.com/legalnews/west-texas-plaintiff-friendly-patent-3488454/ ("West Texas plaintiff-friendly patent decisions keep coming"). Ergobaby's forum shopping undercuts its claim that Los Angeles is the most appropriate location for BabyBjörn's depositions. Accordingly, even if the presumption Ergobaby urges the Court to adopt were applied, the strength of that presumption is significantly tempered, if not extinguished.

In the end, this presumption debate is largely academic. Regardless of which presumption the Court starts with—whether in the direction of the forum state or the witnesses' principal place of business—the facts here under the *Cadent* factors compel the conclusion that the depositions must take place in Sweden.

### *Cadent* Factors

*(a) location of counsel for the parties in the forum district*

---

(considering location for personal depositions and mental examinations of individual plaintiffs); *Starbuzz Tobacco, Inc. v. Gold Star Tobacco Inc.*, No. SA CV 19-00408-JVS (DFMx), 2019 WL 6894525, at *1 (C.D. Cal. Sept. 5, 2019) (considering plaintiff's motion to have personal deposition of plaintiff's CEO occur via videoconference); *Music Group Macao Commercial Offshore Ltd. v. Foote*, No. 14-cv-3078-JSC, 2015 WL 13423886, at *1 (N.D. Cal. Aug. 11, 2015) (considering location for personal deposition of plaintiff's CEO after CEO was already voluntarily deposed in California under Rule 30(b)(6)).

4866-0934-6727\1

None of the attorneys that will be deposing or defending these depositions reside in California. BabyBjörn's lead attorneys reside in Salt Lake City, Utah. Ergobaby's lead attorneys reside in Kansas City, Missouri.[3] Thus, regardless of where the depositions take place, the attorneys for both sides will have to book air travel and hotels if the depositions are conducted in-person. Moreover, Ergobaby can save attorney time and fees by conducting remote video depositions with the witnesses in Sweden, as it recently did with the inventor of the patent-in-suit.

This factor weighs in favor of conducting the depositions in Sweden.

*(b) number of representatives a party is seeking to depose*

Ergobaby's Rule 30(b)(6) deposition notice identified 43 topics for deposition. As it would be impossible to adequately prepare a single witness to testify on all 43 topics, BabyBjörn identified five corporate representatives to cover several topics each within their area of responsibility for the company. All five witnesses reside and work in Sweden, and none of them travel to California for business. *See* Declaration of David Grunbaüm ("Grunbaüm Decl.") (Ex. A). It is logistically and economically better for **all** involved to conduct these depositions in Sweden. Ergobaby and BabyBjörn would simply have to send one attorney to Sweden or conduct the deposition remotely via video—a process that has become exponentially more effective and ubiquitously used over the past few years given the technological improvements. In addition, the witnesses would only sacrifice one day away from their business obligations for their depositions.

In contrast, if BabyBjörn's corporate representatives were required to travel to Los Angeles, BabyBjörn would incur the international travel costs of sending five executives/directors from Sweden to Los Angeles, including at least two hotel nights for each witness. Each witness would have to sacrifice at least two additional work days for the travel, resulting in BabyBjörn losing an additional **ten work days** from these important employees. And all of this burden on BabyBjörn would still not negate the need for both parties' counsel to travel to the depositions.

Given the number of witnesses, it is plainly unreasonable to require these depositions to take place in Los Angeles. *See, e.g., La Jolla,* 2012 WL 13175865, at *2 (granting protective order and requiring corporate depositions to occur in Australia or via video; "[F]our is a considerable number of deponents to remove from its principal place of business. Moreover, … sending an attorney for each party from San Diego to Australia for the depositions would cost considerably less than flying four witnesses from Australia to San Diego").

This factor weighs heavily in favor of the depositions occurring in Sweden.

---

[3] Although both parties have offices and some attorneys of record in Southern California, the Kansas City and Salt Lake City attorneys will be the attorneys taking and defending the depositions.

4866-0934-6727\1

*(c) likelihood of significant discovery disputes arising that would necessitate resolution by the forum court*

Although "[t]his factor often constitutes the most compelling reason for a court to order that depositions of foreign corporations take place in the United States," "it is exceedingly rare for a dispute to arise at deposition that requires the need for judicial intervention during the course of the deposition." *La Jolla*, 2012 WL 13175865, at *2. "The central question is whether the parties' discovery conduct suggests that they or the deponents will be uncooperative or obstructionist if the depositions occur in the corporate employer's country." *Id*. (quoting *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 268 F.R.D. 45, 55 (E.D. Va. 2010) (cleaned up). In this case, there is **no indication** that any witness or counsel will be uncooperative or obstructionist.

Ergobaby points out that the parties have had five occasions to meet and confer on possible disputes, which resulted in two disputes being presented to the Court via motions. Def. Ltr. at 4. Five disagreements in the span of more than a year of litigation, with three of them resolved without Court intervention, is an admirable track record demonstrating good faith and cooperation. It certainly is not an indication that depositions are likely to be rife with contention. In addition, the two disputes submitted to the Court were (a) a motion to strike untimely invalidity contentions (Dkt. 50) and (b) the present dispute regarding the location of deposition. Neither of these disputes are the kind that reveal obstructionist motives or otherwise suggest a likelihood of in-deposition disputes requiring real-time Court intervention. Thus far, the parties have stipulated to a case schedule (Dkt. 37), stipulated to a protective order (Dkt. 33), stipulated to an ESI discovery order (Dkt. 47), and recently stipulated to a remote deposition protocol (Exhibit C). If anything, the proceedings of this case show that the parties work cooperatively and resolve most disagreements via compromise without Court intervention, making the chances of needing real-time Court assistance during a deposition almost non-existent.

This factor weighs in favor of the depositions occurring in Sweden.

*(d) whether the persons sought to be deposed often engage in travel for business purposes*

"The inquiry with regard to business travel should not focus on whether the deponent is a frequent traveler in general, but instead should focus on that deponent's travel history to the forum where the adverse party seeks to conduct the deposition." *La Jolla*, 2012 WL 13175865, at *3 (cleaned up). None of BabyBjörn's designees travel to California for business. *See* Grunbaüm Decl. (Ex. A). Indeed, they rarely travel to the United States for business at all. *Id*. It is certainly not the case that any of these witnesses **often** engage in business travel to the United States. Thus, requiring these witnesses to take three days away from their regular work duties to travel to Los Angeles for a deposition would impose an undue and unfamiliar burden on them and BabyBjörn.

This factor weighs heavily in favor of holding the depositions in Sweden.

*(e) the equities regarding the nature of the claim and the parties' relationship*

This factor is informed by the same considerations addressed above with regard to the number of witnesses. The burden and inconvenience to BabyBjörn in sending five of its executives and directors to Los Angeles for their depositions far outweighs any burden on Ergobaby in sending its attorney to Sweden for the depositions or conducting the depositions remotely. *See La Jolla*, 2012 WL 13175865, at *3 ("[T]here is … no question that having four of its high-level officers and directors travel to the United States would constitute more than a minor inconvenience to GoConnect."). Thus, even if the depositions must occur in person, as Ergobaby contends, the equities still weigh starkly in favor of them occurring in Sweden.

Moreover, the nature of the claims in this case do not suggest that in-person depositions are essential; remote video depositions are a very acceptable option here. This is a patent infringement action. The core liability issues focus on infringement and the validity of the patent. Both questions are objective inquiries based on the content of the patent, the content of prior art sources, and the structure of the accused product. These issues are routinely proven primarily through expert witness testimony, as is the damages question. Unlike negligence or other tort cases, patent cases rarely involve factual disputes that depend on competing eye-witness testimony placing credibility determinations at the center of the case. Instead, the witnesses in question here will simply be testifying about BabyBjörn's development of the patented invention, BabyBjörn's sales and profitability data, and BabyBjörn's marketing and advertising documents and activities. These are not issues that require in-person treatment or that raise important credibility questions. The case Ergobaby cites is inapposite.[4]

Ergobaby's argument that the Swedish language barrier necessitates in-person depositions is overblown. While BabyBjörn wants a translator present (as Swedish is the first language of the designated witnesses), every witness is highly educated and also speaks English; there should be no meaningful language problems with a video deposition if Ergobaby chose that option.[5] Indeed, Ergobaby recently deposed the inventor of the patent-in-suit via videoconference in Sweden. And although the translator Ergobaby hired turned out to be terrible, the witness was able to testify well in English and the deposition moved forward without a language barrier problem. Moreover, a bad translator would negatively impact the deposition whether in-person or via video.

---

[4] *See United States v. Approximately $53,378 in U.S. Currency*, No. C08-5023 MMC (BZ), 2010 WL 4347889, at *1 (N.D. Cal. Oct. 27, 2010) (considering a claim for forfeited funds related to a criminal proceeding, where "the Government will use Sims' deposition to examine her credibility.").

[5] There certainly is no need for "two translators" at each deposition, which was a factor cited against video depositions in *Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 402, 406 (S.D.N.Y. 2018), relied on by Ergobaby.

4866-0934-6727\1

Ergobaby cites *Nat.-Immunogenics Corp. v. Newport Trial Grp.*, No. 8:15 CV-02034-JVS (JCGx), 2017 WL 10562990 (C.D. Cal. Aug. 14, 2017) to contend that in-person depositions are critical. Def. Ltr. at 5. But Ergobaby mischaracterizes that decision by suggesting that the Court ordered "foreign-based corporate designees" residing in Southeast Asia to travel to California. *Id*. In fact, the plaintiff in that case was a **Florida-based company**, and its principals were **vacationing** "in Southeast Asia on a prepaid personal trip." *Id*. at *2. The Court found that the corporate witnesses "departed in their international trip several weeks after the notices of their depositions," and the facts in that case otherwise indicated that the plaintiff and witnesses were being obstructionist and "controversial." *Id*. at *5-7 ("Thus, it is fair to say that their testimony will be controversial, and the tenor of the interactions between the parties and counsel during the depositions may be tense. Videoconference depositions are not suitable for such controversial situations."). As set forth above, there is no evidence to suggest BabyBjörn's witnesses will be confrontational or evasive in their depositions.

Regarding Ergobaby's other reasons for not wanting to conduct the depositions remotely, those reasons do not warrant holding the depositions in Los Angeles. As explained *supra*, even if the depositions proceed in-person, the equities heavily favor Ergobaby sending an attorney to Sweden over forcing five BabyBjörn executives and directors to invest three days each to travel to Los Angeles. Whether Ergobaby chooses in-person or remote depositions, Sweden is the appropriate location when all the equities are balanced.

This final factor favors Sweden as the location for BabyBjörn's corporate depositions.

Given the foregoing analysis, holding BabyBjörn's corporate depositions in Los Angeles imposes an undue burden on BabyBjörn, justifying a protective order. Because every *Cadent* factor favors Sweden, the facts in this case both confirm the presumption that these depositions should take place at BabyBjörn's principal place of business in Sweden, and also convincingly rebut any presumption in favor of the forum state (if that presumption applied as Ergobaby contends). Under either presumption, the proper location is Sweden.

Regarding Ergobaby's cost-shifting argument, if the depositions are held in Sweden, each party shares the same burden of sending an attorney to Sweden. No cost-shifting is warranted in such balanced circumstances. The only situation where cost-shifting would make equitable sense is if BabyBjörn's witnesses were compelled to travel to Los Angeles, because that would place an additional and onerous burden on BabyBjörn. If that is the case, Ergobaby should be required to cover all witness travel costs associated with holding the depositions in Los Angeles.

Very sincerely,

/s/ Mark A. Miller
Mark Miller
of Dorsey & Whitney LLP
*Counsel for Plaintiff*